Samir F. Aarab
Caitlin Boland Aarab
BOLAND AARAB PLLP
11 Fifth Street N, Suite 207
Great Falls, MT 59401
Telephone: (406) 315-3737
sfaarab@bolandaarab.com
cbaarab@bolandaarab.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA,
## GREAT FALLS DIVISION

| | |
|---|---|
| ROBERT J. MATHEWSON, Jr., <br><br> Plaintiff, <br><br> vs. <br><br> CORECIVIC, INC.; BRENT MADRID (in his individual and official capacities); RANAE WEAVER (in her individual and official capacities); and KARI ALSTAD (in her individual capacity), <br><br> Defendants. | Cause No. CV-18-59-GF-BMM-JTJ <br><br><br> **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

The Plaintiff, Robert J. Mathewson, Jr., through his counsel,

Boland Aarab PLLP, and for his claims against the Defendants, states

and alleges as follows:

1

## JURISDICTION AND VENUE

1.      This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc, *et seq.* ("RLUIPA").  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

2.      This Court has supplemental jurisdiction over all related claims arising under state law pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this District and division pursuant to 18 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" at Crossroads Correctional Center, in Toole County, Montana.

## PARTIES

4.      Plaintiff, Robert J. Mathewson, Jr., A.O. # 3015954, is an enrolled member of the Prairie Band Potawatomi Nation, and a state inmate. On September 28, 2017, he was incarcerated Crossroads Correctional Center in Shelby, Montana.  As of the date of this Complaint, he is incarcerated at the Montana State Prison in Deer Lodge, Montana.

5.    Defendant CoreCivic, Inc. ("CoreCivic") is a private prison contracted with the State of Montana.  CoreCivic is headquartered in Nashville, Tennessee, but operates the Crossroads Correctional Center in Shelby, Montana.

6.    Defendant Brent Madrid is or was at times relevant to this lawsuit the Chief of Security for CoreCivic at the Crossroads Correctional Center in Shelby, Montana.  Mathewson sues Madrid in his individual and official capacities.

7.    Defendant Ranae Weaver is or was at times relevant to this lawsuit a Corrections Officer for CoreCivic at the Crossroads Correctional Center in Shelby, Montana.  Mathewson sues Weaver in her individual and official capacities.

8.    Defendant Kari Alstad is or was at times relevant to this lawsuit a Contract Monitor for the State of Montana Department of Corrections at the Crossroads Correctional Center in Shelby, Montana. Upon information and belief, Defendant Alstad is a citizen and resident of Montana. Mathewson sues Alstad in her individual capacity.

## GENERAL ALLEGATIONS OF FACT COMMON TO ALL COUNTS

9.     Mathewson is an enrolled member of the Prairie Band Potawatomi Nation.  On September 28, 2017, he was a state inmate at Crossroads Correctional Center in Shelby, Montana.

10.     Members of the Prairie Band Potawatomi Nation use eagle feathers displayed as prayer fans to conduct religious ceremonies and communicate with ancestors and the Creator.   The destruction or desecration of eagle feathers is understood to bring bad medicine on the perpetrator's family.

11.     Mathewson has a Migratory Bird Permit (MB Permit # 02188C) from the U.S. Department of the Interior entitling him to possess eagle feathers for religious purposes.

12.     On September 28, 2017, a general search was conducted on all inmates' cells at Crossroads. The inmates, including Mathewson, were told to line up outside of their cells while the search took place.

13.     Mathewson's cell was searched by Defendant Weaver.

14.     After Defendant Weaver conducted her initial search of Mathewson's cell, she consulted with Defendant Madrid, who then consulted with Defendant Alstad.

15.    Immediately after consulting with Madrid and Alstad, Weaver called Mathewson over and indicated that he should meet her in his cell.

16.    Mathewson proceeded to his cell, which was in complete disarray, and he noticed that his eagle feather prayer fan, which is essential to his sincerely held religious beliefs, was displayed on top of a pile of his belongings.

17.    Mathewson had all proper documentation for his eagle feathers posted in his cell. His eagle feathers were properly configured into a prayer fan in accordance with his Migratory Bird Permit (MB Permit # 02188C) issued by the United States Department of the Interior.

18.    After entering Mathewson's cell and seeing his eagle feather prayer fan thrown on top of his belongings, Weaver accused Mathewson of improperly configuring his eagle feather prayer fan.

19.    Mathewson tried explaining that he held a permit for the eagle feathers and that the fan was properly configured and used for his sincerely held religious beliefs.

20.    Weaver, after conversing with Madrid and Alstad, decided that his eagle feather prayer fan should be destroyed.

21.    Mathewson requested that his eagle feather prayer fan be sent home to his family for safe keeping, but Weaver refused.

22.    Mathewson then requested that the eagle feather prayer fan be sent to the prison Chaplain, which he believed was the proper protocol for the handling of sacred items.  Weaver refused.

23.    Weaver became irate and said that Mathewson could either destroy the eagle feather prayer fan or he could be placed in solitary confinement, in which case, Weaver would destroy his fan.

24.    Mathewson understood that if he were to go to solitary, he would lose all of his hard-earned privileges, programs, and positions within the prison system, and most of his belongings.

25.    Mathewson became overwhelmed and distressed by the events that were transpiring and, in his anguish, and under extreme duress, he broke the eagle feather prayer fan and handed it over to Weaver.

26.    Weaver then tore Mathewson's Migratory Bird Permit off the wall of his cell and threw it onto the pile of his possessions in the middle of his cell.

27.    After storming out of Mathewson's cell, Weaver once again consulted with Alstad and Madrid, who, by this time, had been joined by Chief of Housing Henson.

28.    Several other inmates at Crossroads witnessed these events.

29.    Soon after these events transpired, Mathewson learned that his father had died suddenly of a heart attack on the same day that he was forced to destroy his eagle feather prayer fan.

30.    Mathewson sincerely believes that he inadvertently caused his own father's death by destroying the eagle feather prayer fan and bringing bad medicine to his family.  He will have to live with this grief and shame for the rest of his life.

31.    Mathewson exhausted his available administrative remedies prior to filing this suit.

## FIRST CLAIM FOR RELIEF

(RLUIPA 42 U.S.C. §§ 2000cc, *et seq*.)

32.     The allegations of Paragraphs 1–31 are incorporated as if fully set forth herein.

33.     The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq.* ("RLUIPA"), bars federally funded institutions from imposing substantial burdens on inmates' religious exercise, unless the government demonstrates that imposition of the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest.

34.     The Defendants are a "program or activity that receives Federal financial assistance" as that term is used in RLUIPA.

35.     The Defendants' threat to Mathewson that he either had to destroy his eagle feather prayer fan or go to solitary confinement substantially burdened his religious exercise and his sincerely held religious beliefs.

36.     The Defendants' threat to Mathewson that he either had to destroy his eagle feather prayer fan or go to solitary confinement is not the least restrictive means of furthering any compelling governmental interest.

37.     The Defendants' actions therefore violated RLUIPA.

8

## SECOND CLAIM FOR RELIEF

(First Amendment Free Exercise; 42 U.S.C. § 1983)

38.    The allegations of Paragraphs 1–31 are incorporated as if fully set forth herein.

39.    The First Amendment to the U.S. Constitution protects the rights of all persons freely to exercise their religious beliefs.

40.    Having and using an eagle feather prayer fan is central to Mathewson's sincerely held religious beliefs as a member of the Prairie Band Potawatomi Nation.

41.    The Defendants' threat to Mathewson that he either had to destroy his eagle feather prayer fan or go to solitary confinement had no reasonable relationship to any penological interest.

42.    By depriving Mathewson of the ability to have and use his eagle feather prayer fan, the Defendants, acting under color of state law, have improperly and unjustifiably infringed Mathewson's right to the free exercise of religion, in violation of the First Amendment.

## THIRD CLAIM FOR RELIEF

(Fourteenth Amendment Equal Protection; 42 U.S.C. § 1983)

43.    The allegations of Paragraphs 1–31 are incorporated as if fully set forth herein.

44.     The Fourteenth Amendment to the U.S. Constitution

requires states to treat all similarly situated people equally, and

prohibits the intentional discrimination against a person based on his

membership in a protected class.

45.     As an enrolled member of the Prairie Band Potawatomi

Nation, Mathewson is a member of a protected class.

46.     The Defendants did not afford Mathewson a reasonable

opportunity to pursue his faith as compared to prisoners of other faiths.

The difference between the Defendants' treatment of Mathewson and

their treatment of other inmates is not reasonably related to legitimate

penological interests.

47.     By intentionally discriminating against Mathewson on the

basis of his membership in a protected class, the Defendants, acting

under color of state law, have improperly and unjustifiably infringed

Mathewson's right to equal protection of the laws, in violation of the

Fourteenth Amendment.

## FOURTH CLAIM FOR RELIEF

(Fourteenth Amendment Procedural Due Process; 42 U.S.C. § 1983)

48.    The allegations of Paragraphs 1–31 are incorporated as if fully set forth herein.

49.    The Fourteenth Amendment to the U.S. Constitution protects the rights of all persons to due process of law.  Specifically, the Fourteenth Amendment protects against the deprivation of a constitutionally protected liberty or property interest without sufficient process.

50.    Mathewson has a Migratory Bird Permit from the U.S. Department of the Interior, and a constitutionally protected property interest in his eagle feather prayer fan.

51.    The Defendants did not afford Mathewson any process before they demanded he destroy his eagle feather prayer fan or be placed in solitary confinement, and no meaningful post-deprivation remedy for the loss of his eagle feathers was available to Mathewson.

52.    Acting under color of state law, the Defendants deprived Mathewson of his constitutionally protected property interest without due process of law, in violation of the Fourteenth Amendment.

## FIFTH CLAIM FOR RELIEF

(Mont. const. art. II, § 5)

11

53.    The allegations of Paragraphs 1–31 are incorporated as if fully set forth herein.

54.    Article II, § 5 of the Montana Constitution protects the rights of all persons freely to exercise their religious beliefs.

55.    Having and using an eagle feather prayer fan is central to Mathewson's sincerely held religious beliefs as a member of the Prairie Band Potawatomi Nation.

56.    The Defendants' threat to Mathewson that he either had to destroy his eagle feather prayer fan or go to solitary confinement had no reasonable relationship to any penological interest.

57.    By depriving Mathewson of the ability to have and use his eagle feather prayer fan, the Defendants have improperly and unjustifiably infringed Mathewson's right to the free exercise of religion, in violation of Article II, § 5 of the Montana Constitution.

## SIXTH CLAIM FOR RELIEF

(Mont. const. art. II, § 4)

58.    The allegations of Paragraphs 1–31 are incorporated as if fully set forth herein.

59.    Article II, § 4 of the Montana Constitution requires that all similarly situated people be treated equally, and prohibits the intentional discrimination against a person based on his membership in a protected class.

60.    As an enrolled member of the Prairie Band Potawatomi Nation, Mathewson is a member of a protected class.

61.    The Defendants did not afford Mathewson a reasonable opportunity to pursue his faith as compared to prisoners of other faiths. The difference between the Defendants' treatment of Mathewson and their treatment of other inmates is not reasonably related to legitimate penological interests.

62.    By intentionally discriminating against Mathewson on the basis of his membership in a protected class, the Defendants have improperly and unjustifiably infringed Mathewson's right to equal protection of the laws, in violation of Article II, § 4 of the Montana Constitution.

**SEVENTH CLAIM FOR RELIEF**

(Mont. const. art. II, § 17)

63.    The allegations of Paragraphs 1–31 are incorporated as if fully set forth herein.

64.    Article II, § 17 of the Montana Constitution protects the rights of all persons to due process of law.  Specifically, it protects against the deprivation of a constitutionally protected liberty or property interest without sufficient process.

65.    Mathewson has a Migratory Bird Permit from the U.S. Department of the Interior, and a constitutionally protected property interest in his eagle feather prayer fan.

66.    The Defendants did not afford Mathewson any process before they demanded he destroy his eagle feather prayer fan or be placed in solitary confinement, and no meaningful post-deprivation remedy for the loss of his eagle feathers was available to Mathewson.

67.    The Defendants deprived Mathewson of his constitutionally protected property interest without due process of law, in violation of Article II, § 17 of the Montana Constitution.

## **PRAYER FOR RELIEF**

Wherefore, Mathewson respectfully requests judgment for:

1.    Compensatory damages in an amount to be proved at trial;

2.     Punitive damages in an amount to be proved at trial;

3.     Costs, attorneys' fees, and interest as allowed by law.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure,

Mathewson demands a trial by jury on all claims and issues so triable

in this case.

DATED this 28th day of February, 2019.

By:     /s/ *Caitlin Boland Aarab*
Samir F. Aarab
Caitlin Boland Aarab
BOLAND AARAB PLLP
11 5th Street N, Suite 207
Great Falls, MT 59401
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2019, a copy of the foregoing document

was served on the following persons by the following means:

1, 2, 3      CM/ECF
_____      Hand delivery
__4__      Mail
_____      Overnight delivery service
_____      Facsimile
_____      E-mail

1.      Clerk of U.S. District Court

2.      Chad E. Adams, Counsel for CoreCivic Defendants
      BROWNING KALECZYC BERRY & HOVEN
      800 N. Last Chance Gulch
      Suite 101
      PO Box 1697
      Helena, MT 59624-1697
      Email: chad@bkbh.com

3.      Sarah Clerget, Counsel for Defendant Kari Alstad
      AGENCY LEGAL SERVICES BUREAU
      MONTANA DEPARTMENT OF JUSTICE
      1712 Ninth Avenue
      PO Box 201440
      Helena, MT 59620-1440
      Email: sclerget@mt.gov

4.      Robert J. Mathewson, Jr., Plaintiff
      AO# 3015954
      700 Conley Lake Rd.
      Deer Lodge, MT 59722

      By:    /s/ *Caitlin Boland Aarab*
            Samir F. Aarab
            Caitlin Boland Aarab
            BOLAND AARAB PLLP
            Attorneys for Plaintiff