**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| ROBERT J. MATHEWSON, Jr., <br><br> Plaintiff, <br><br> vs. <br><br> CORE CIVIC CORPORATION (aka CORRECTIONS CORPORATION OF AMERICA), CHIEF BRENT MADRID, LT. BUSHMAN-WEAVER, AND KARI ALSTEAD (aka KARI KENYON), <br><br> Defendants. | **CV-18-59-GF-BMM** <br><br><br> **ORDER** |

**INTRODUCTION**

    Defendant Kari Alstead filed a Motion for Summary Judgment on June 11, 2018. (Doc. 9.) Defendants CoreCivic, Inc., Chief Brent Madrid, and Lt. Bushman-

1

Weaver (collectively "CoreCivic Defendants") filed a Notice of Joinder in Defendant Alstead's Motion for Summary Judgment on June 20, 2018. (Doc. 15.) Plaintiff Robert J. Mathewson, Jr. filed a Cross Motion for Summary Judgment on June 29, 2018. (Doc. 18.) United States Magistrate Judge John Johnston entered Findings and Recommendations regarding Defendants Motion for Summary Judgment and Mathewson's Cross Motion for Summary Judgment on February 1, 2019. (Doc. 30.)

Alstead timely objected to Judge Johnston's Findings and Recommendations on February 15, 2019. (Doc. 37.) CoreCivic Defendants timely joined Alstead's objections on February 15, 2019. (Doc. 38.)

**STANDARD OF REVIEW**

The Court reviews de novo Findings and Recommendations to which a party timely objects. 28 U.S.C. § 636(b)(1). "A party makes a proper objection by identifying the parts of the magistrate's disposition that the party finds objectionable, and presenting legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Montana Shooting Sports Ass'n v. Holder*, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010) (citation omitted).

The Court reviews findings and recommendations to which no party objects for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656

F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

## BACKGROUND

Alstead and CoreCivic Defendants (collectively "Defendants") object, in relevant part, to several of Judge Johnston's factual findings. (Doc. 37 at 2.) Defendants contend that Judge Johnston omitted four undisputed facts that Defendants believe to be material. *Id*. at 2-3. The Court will add the omitted facts to the extent they are relevant.

Mathewson remains incarcerated at Crossroads Correctional Center ("CCC") in Shelby, Montana. (Doc. 20-1 at ¶ 3.) Montana State Prison Procedure 3.3.3 ("MSP 3.3.3") governs inmate grievances at CCC. (Docs. 12 at ¶ 3.) An inmate at CCC generally "must first present an issue of concern on an *Inmate/ Offender Informal Resolution Form* [("IRF")] . . . to his assigned Unit Manager (UM) or designee within five working days of the action or omission that caused the complaint." (Doc. 12-1 at 3.) The UM, or his designee, then "will investigate or resolve the issue informally, and provide a response to the inmate on the [IRF] within 20 working days of receipt of the form." *Id*. at 4.

An inmate, who wishes to file a formal grievance, "must do so within five working days from the date he received the informal resolution response." *Id*. The Grievance Coordinator ("GC"), or his designee, "will respond to all properly filed grievance forms within 20 working days." *Id*. at 5 The response of the GC, or his designee, to an inmate's formal grievance must "contain specific, explanatory reasons for any decision to assist the inmate's understanding of the decision." *Id*. An inmate, who wishes to appeal the decision of the GC, or his designee, regarding the inmate's formal grievance, must appeal "within five working days from the date he received the formal level response." *Id*.

The inmate must appeal the GC's formal response "by submitting an Inmate/Offender Grievance Appeal to Warden/Administrator from . . . and any additional documentation to the GC within five working days of receipt of the response to the grievance." *Id*. at 6. The Warden, or his designee, "will review the grievance and provide a written response to the inmate, specifying the reasons for any decision" within twenty working days of the receipt of the appeal form. *Id*. The Warden, or his designee, "will include instructions to the inmate that he may appeal the decision to the Department Director." *Id*. The Warden's response to the inmate's appeal "will be returned to the inmate through the GC, who will notify the inmate that he has five working days from receipt to submit an appeal to the decision to the GC who will forward it to the Department Director." *Id*.

The Department Director, or his designee, will respond to an inmate's appeal "within [twenty] working days of receipt of the grievance and appeal." *Id*. at 8. The Department Director, or his designee, will "specify[] the reasons for any decision." *Id*. The Department Director's "response is final, and exhausts all administrative remedies available to the inmate thorough the inmate grievance program." *Id*.

CCC received Mathewson's IRF, dated September 29, 2017, on October 2, 2017. (Doc. 12-2 at 4.) Mathewson stated that CCC Facility Officer Bushman told Mathewson to destroy his "eagle feather player fan" or else Mathewson would be sent to "the hole" and would get a major write up. (Doc. 12-2 at 4.) Mathewson "broke the handle" of his eagle feather player fan and gave it to Bushman in response to Bushman's alleged threats. *Id*. Mathewson wrote "an investigation" under the action requested section of his IRF. *Id*. UM Johnson responded to Mathewson's IRF on October 19, 2017. *Id*. UM Johnson specified in his response that "[s]taff will investigate the Grievance and an appropriate action will be conducted." *Id*. UM Johnson "granted in part" Mathewson's IRF. *Id*. The UM's response stated "[y]ou have a right to file a Formal Grievance if this response does not satisfy you." *Id*. Mathewson did not appeal the results of his IRF, or file a formal grievance, because Mathewson remained unaware of "what part of [his] request for an investigation [had been] denied." (Doc. 20-1 at ¶ 28.)

CCC received Mathewson's second IRF, dated May 9, 2018, on May 10, 2018. *Id.* at 3. Mathewson explained that CCC granted an investigation into Lieutenant Weaver/ Bushman "ordering [Mathewson] to destroy [his] eagle feathers." *Id.* Mathewson stated, in his second IRF, that as of May 9, 2018, he had not been informed of what the results of the investigation were. *Id.* Mathewson stated that he felt "that no investigation has happened or will happen." *Id.* Mathewson requested an investigation and to know the outcome of that investigation. *Id.* The GC responded to Mathewson's second IRF on May 22, 2018. *Id.* The GC stated that Mathewson's IRF was "no processed per [MSP 3.3.3]" as Mathewson's "grievance has already been investigated." *Id.*

## LEGAL STANDARD

An inmate's "failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act ("PLRA")." *Jones v. Bock*, 549 U.S. 199, 216 (2014). "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* A motion for summary judgment remains the appropriate vehicle for a pretrial determination of whether an inmate has exhausted his administrative remedies pursuant to the PLRA. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014).

A party may move for summary judgment on all or part of a claim. Fed. R. Civ. P. 56(a). If no genuine dispute of material fact exists, then summary judgment

is proper, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court will grant summary judgment where the documentary evidence produced by the parties only permits one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## DISCUSSION

Judge Johnston recommended that the Court deny Defendants' Motion for Summary Judgment (Doc. 9) and that the Court grant Mathewson's Cross Motion for Summary Judgment (Doc. 18). Judge Johnston explained that Defendants' "policy provides that an investigation is the only action that can be requested and once it is granted all administrative remedies have been exhausted." (Doc. 30 at 9.) Judge Johnston concluded that because CCC had granted Mathewson's request for an investigation that Mathewson had exhausted all of his administrative remedies. *Id*. Defendants contend that Judge Johnston misconstrued MSP 3.3.3 and misapplied the Defendants' burden in his Findings and Recommendations. (Doc. 37 at 18.)

Inmates remain precluded from bringing an action regarding prison conditions pursuant to 42 U.S.C. § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that

7

exhaustion is mandatory under the PLRA." *Jones*, 549 U.S. at 211. Inmates "must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The PLRA does not establish, however, the applicable procedures that an inmate must exhaust before bringing suit pursuant to § 1983. *Manley v. Rowley*, 847 F.3d 705, 711-12 (9th Cir. 2017) (citing *Jones*, 549 U.S. at 218). Rather, the applicable procedures are defined "by the prison grievance process itself." *Manely*, 847 F.3d at 711-12 (quoting *Jones*, 549 U.S. at 218).

An inmate "need not exhaust remedies if they are not available." *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). An administrative procedure proves unavailable when the procedure "might be so opaque that it becomes, practically speaking, incapable of use." *Blake*, 136 S. Ct. at 1859. This incapable use generally occurs when there exists some mechanism "to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. "When rules are 'so confusing that . . . no reasonable prisoner can use them,' then 'they're no longer available.'" *Id*. (citation omitted). An inmate therefore must "exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (citations omitted).

The defendant "must plead and prove nonexhuastion as an affirmative defense." *Albino*, 747 F.3d at 1171 (citations omitted). The defendant must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id*. at 1172 (citation omitted). The burden shifts to the inmate once the defendant has met his initial burden. *Id*. An inmate must produce "evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. The defendant nonetheless possess the ultimate burden of proof. *Id*.

Mathewson's ability to appeal the denial in part of his grievance proved unavailable as Mathewson remained unaware of which part of his grievance that UM Johnson had denied. Mathewson requested that CCC investigate Mathewson's allegation that Bushman commanded Mathewson to destroy his "eagle feather player fan." (Doc. 12-2 at 4.) Per MSP 3.3.3, "[a]n investigation request is the only acceptable action in regard to all staff conduct issues." (Doc. 12-1 at 10.) UM Johnson investigated Mathewson's grievance on October 5, 2017. (Doc. 12-3.) UM Johnson explained that Mathewson "was given the opportunity to remove the feather and broke the fan in anger therefore damaging it himself." *Id*. Mathewson therefore "was not forced to damage his eagle feather fan." *Id*.

The UM granted in part Mathewson's requested action on October 19, 2017—fourteen days after UM Johnson conducted his investigation into

9

Mathewson's allegation. (Doc. 12-2 at 4.) UM Johnson did not include the summary of his investigation with his response that granted in part Mathewson's IRF. *See* (Docs. 12-2 at 3, 4; 20-1 at 6.) Instead, UM Johnson stated that CCC staff would investigate Mathewson's allegation and would take appropriate action. (Doc. 12-2 at 4.) UM Johnson's response to Mathewson's IRF stated "[y]ou have the right to file a Formal Grievance if this response does not satisfy you." (Doc. 12-2 at 4.)

MSP 3.3.3 provides that if the UM's decision satisfies the inmate, then CCC will consider the issue resolved and no further action will be taken. (Doc. 12-1 at 18.) MSP 3.3.3 further provides that "[i]f an inmate's action requested is granted, he will not be allowed to appeal the decision, and it is understood he has exhausted all administrative remedies." (Doc. 12-1 at 3.) Mathewson requested the only remedy that MSP 3.3.3 permitted Mathewson to request—an investigation. (Doc. 12-2 at 4.) UM Johnson stated that CCC staff would investigate Mathewson's grievance. Mathewson likely was satisfied with UM's decision to investigate Mathewson's allegation as Mathewson had requested an investigation. *Id.*

Mathewson never appealed UM Johnson's partial grant of Mathewson's request for an investigation because Mathewson did not know "what part of [his] request for an investigation was denied." (Doc. 20-1 at 6.) In fact, Mathewson remained unaware of the results of UM Johnson's investigation until June 11,

2018. *Id*. MSP 3.3.3 admittedly informs an inmate that he remains precluded from appealing an IRF that CCC has granted. (Doc. 12-1 at 3.) MSP 3.3.3 fails to address what mechanism exists, however, for appealing CCC's grant in part of an inmate's IRF when the inmate remains unaware of which part of his IRF has been denied. *See* (Doc. 12-1).

MSP 3.3.3's procedure proves "so opaque that it becomes, practically speaking, incapable of use." *Blake*, 136 S. Ct. at 1859. This outcome is especially true in light of the circumstances of Mathewson's grievance and appeal. UM Johnson conducted an investigation into Mathewson's allegation before granting in part Mathewson's request. (Doc. 12-3.) UM Johnson then failed to disclose the summary of his investigation, choosing instead to inform Mathewson that CCC would investigate. (Doc. 12-2 at 4.) Mathewson remained unaware of the status of his investigation and unaware of what part of Mathewson's request for an investigation was denied in part. Mathewson proved unable to "discern or navigate" the administrative exhaustion process. *Blake*, 136 S. Ct. at 1859. In other words, UM Johnson's response to Mathewson's IRF in accordance with MSP 3.3.3 proved so confusing that Mathewson was unable to use the administrative process thereby rendering it no longer available. *See id*. Judge Johnston correctly concluded that Mathewson had exhausted his administrative remedies.

Accordingly, IT IS ORDERED:

1. Judge Johnston's Findings and Recommendations (Doc. 30) is ADOPTED IN FULL.

2. Defendants' Motion for Summary Judgment (Doc. 9) is DENIED.

3. Mathewson's Cross Motion for Summary Judgment (Doc. 18) is GRANTED.

DATED this 23rd day of May, 2019.

*Brian Morris*
Brian Morris
United States District Court Judge